SUSIE McGUIRE v. GREAT NORTHERN RAILWAY COMPANY.[1]

December 4, 1908.

Nos. 15,952—(115).

**Death by Wrongful Act—Evidence.**

The plaintiff's husband, while a passenger in a freight car of the defendant in charge of his personal property therein, consisting of live stock and emigrant's movables, was mortally burned by the car taking fire. This is an action under the statutes of North Dakota by his widow to recover damages on account of his death by reason of the alleged negligence of the defendant. Verdict for plaintiff. *Held*, that the evidence was sufficient to sustain a finding to the effect that the fire originated from outside of the car, and to require the defendant, after such evidence was received, to show that the fire did not originate from the want of due care on its part, and, further, that the verdict is sustained by the evidence.

Action in the district court for Pipestone county upon the statutes of North Dakota to recover $25,000 for the death of plaintiff's husband caused by the negligence of defendant. The case was tried before P. E. Brown, J., and a jury which rendered a verdict in favor of plaintiff for $14,982. From an order denying defendant's motion

[1] Reported in 118 N. W. 556.

for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*William R. Begg, J. L. Kennedy, C. H. Winsor,* and *W. F. McNaughton,* for appellant.

*John Jenswold, Jr.,* for respondent.

START, C. J.

In March, 1906, the plaintiff's husband, P. F. McGuire, was a passenger on one of the defendant's freight trains in a box car with his live stock, household furniture, and other emigrant's movables, including hay and feed for his stock, by virtue of a contract with the defendant to transport him and them to McCanna, in the state of North Dakota. On the night of March 26, while the train was running at a high rate of speed, and as it neared Gardner, North Dakota, the car in which he was so riding caught fire, whereby he was mortally burned and died in the car. This action was brought by his widow in the district court of the county of Pipestone upon the statutes of North Dakota to recover damages for his death on the alleged ground that the fire was caused by the negligence of the defendant. The complaint alleged acts of negligence on the part of the defendant, and the answer put them in issue. At the close of the evidence the defendant requested the court to direct a verdict in its favor on the ground that the evidence was not sufficient to sustain a verdict for the plaintiff. The court refused to so instruct, and submitted to the jury clear and correct instructions relevant to the issues, which were satisfactory to both parties. There was a verdict for the plaintiff in the sum of $14,982, and the defendant appealed from an order denying its motion for judgment notwithstanding the verdict or a new trial.

The record presents for our consideration the one question whether, upon the entire evidence, a verdict for the plaintiff can be sustained. It is the contention of the defendant that the verdict rests upon a mere conjecture as to the origin of the fire and is wholly unsupported by any evidence. In considering the evidence for the purpose of determining the question whether it is sufficient to sustain a verdict for the plaintiff, the relation and duty of the defendant and the

106 M.—13

deceased to each other and to the car must be kept in mind. Their relation was that of carrier and passenger, and it was the duty of the defendant to exercise the highest degree of care for the safety of the deceased consistent with the operation of the train he was on. He assumed the risks and inconveniences necessarily incident to his carriage in a freight car, for the purpose of personally caring for his stock and other property therein. Proof, therefore, of the simple fact that the car caught fire would not justify any inference of negligence on the part of the defendant which resulted in the firing of the car and the death of the deceased. This case, then, is distinguishable from cases where the injury results from a fire started in a passenger coach, which is exclusively within the control and operation of the carrier, and also from those cases where the injury is caused by a collision, derailment, or breakage.

The burden, therefore, was on the plaintiff to show the negligence of the defendant by sufficient evidence, direct or circumstantial, or both. The mere fact that the car caught fire, unconnected with any other evidence, does not tend to prove that the defendant was negligent, for the rule, "Res ipsa loquitur," does not unqualifiedly apply to this case. If, to state the matter concretely, the fire originated within the car, the evidence is not sufficient to charge the defendant with negligence; for the deceased was in possession of the inside of the car so far as it was necessary to care for himself and his property therein. But, other than this, the defendant had exclusive possession and control of the car, and if the fire originated on the outside of the car, proof of such fact would be sufficient prima facie to sustain a finding of the ultimate fact that the fire was caused by the negligence of the defendant, and to require it to show that it exercised the required degree of care in the premises. This follows from the fact, as the jury must have found under the instructions of the court, that in the ordinary course of things a freight car in a moving train does not take fire from the outside and burn up, if due care is used by those who are in the exclusive possession and control thereof. To the extent thus indicated the rule, "Res ipsa loquitur," applies to this case. Now, the fire originated either inside the car or on the outside. If it did not originate on the inside, it follows that it originated on the outside; and vice versa.

The pivotal question then is, Did the fire originate on the outside of the car? It is not our purpose to discuss the evidence in detail, but briefly to indicate some evidentiary facts which the evidence tended to prove. The car was eight feet wide by thirty four feet long, with two side doors, one on each side, near its middle. It was occupied by the deceased, his son Charles, the only survivor of the fire, and a young man by the name of Van Horsen. The car was loaded with eight horses, which were in the rear end of the car securely tied, and completely filling that end of the car. Near the horses, and separated from them by a plank was a cow securely tied and facing the same way as the horses, leaving a vacant space some three or four feet near the center of the car, between the live stock and the furniture and machinery which was piled in the other end of the car. There were four bales of hay in the car, piled two bales in height close up to one of the side doors, which was not closed tightly. In front of the four bales were two bales of loose hay. The live stock stood upon bedding of loose hay, some five inches in thickness. There was a hole covered with hay through the floor of the car where the cow stood.

The fire in the car was discovered between eleven and twelve o'clock at night and about forty five minutes after the train left Moorhead, at which place the deceased went to bed on a mattress on top of the furniture. The son Charles McGuire, remained up for a while longer, and for fifteen minutes before he retired he observed a large number of sparks in the air outside the car, which seemed to be coming from the front end of the train and were about on a level with the center of an opening where the door was slid back about a foot. Van Horsen went to bed, and the son followed him a few moments later, and before doing so he closed and fastened the door; but it did not close tightly, as it was left so that it would shake open some three-fourths of an inch. The train was then going from thirty five to forty miles an hour and consisted of fifty two cars, exclusive of the engine and caboose, of the average length of forty feet. The burned car was the forty-seventh one from the engine.

When the son went to bed a lighted ordinary tubular lantern, used in caring for the stock, was hanging in the opposite end of the car from the horses, in its usual place over the vacant space some three

or four feet near the middle of the car on the side where the furniture was. There was nothing except the floor immediately underneath the lantern, but a line drawn from the baled hay up to the top of the car would be more than three inches from the lantern. The lantern was hung in a clevis, which was a part of the car and fixed to a scantling, by putting the bolt of the clevis through the handle of the lantern. The bolt was prevented from slipping out of the clevis by a burr turned tightly on the end thereof. The lantern was in good condition, and the handle solid and rigid and so fixed that it did not swing from side to side with the motion of the car, and só located that neither the horses nor the cow could reach it.

When the son went to bed the sparks were still flying and a strong wind blowing on the side of the car where the bales of hay were placed by the door. The son went to sleep, but woke up soon after and found the car on fire. He testified relevant to where the fire was when he first discovered it as follows: "Q. And where did you see the fire as you woke up? A. It was next the door, where the baled hay was, and it seemed to be drawing up from the inside of the door, over the hay like that. Q. Coming up under inside of that door, over the hay there? A. Yes, sir. Q. And how much of a flame was there then? A. There was quite a bit of flames that just come over the top of the car like that, blazed up and followed the ceiling of the car across. The flames seemed to come pretty near across the car, across the top of the car as they come up. Q. Well, that would make it over the cow too then? A. Yes, sir. Q. Were those flames as far ahead as where the lantern hung? A. No, sir." His father was then trying to unfasten one of the side doors, and Van Horsen the other one. The son went over the horses, and although severely burned, he escaped through the end window of the car and made his way to the caboose and the train was stopped. When he was on the car next to the one which was on fire, he looked back and its center was enveloped in flames on the outside of the car. He did not see the lantern after he woke up, for he was not looking for it, but for a way to get out of the burning car.

We are of the opinion that the evidentiary facts we have indicated take the question whether the fire originated within the car out of the realm of conjecture, and that they are sufficient to justify the

jury in finding that the fire originated outside of the car and from sparks from the engine or fire from a hot box. The defendant's engineer testified to the effect that he looked back and saw a small blaze of fire on the car no bigger than a man's hand and thought it was a hot box. He immediately looked again, and the blaze was high enough so that he saw the full side of the car and that it was not a hot box, but a car blazing, issuing from the inside. There was also evidence on the part of the defendant tending to show an inspection of the cars, including the boxes, and that the engine was a standard one in proper repair and equipped with the best known spark arrester. This evidence was not conclusive that the defendant exercised the high degree of care in the premises which the law exacts, which it was required to show after it was shown that the fire originated on the outside of the car. Its credibility and weight were questions for the jury.

Our conclusion, based upon a careful consideration of the record, is that the defendant was not entitled to judgment, for the evidence is sufficient to sustain the verdict.

Order affirmed.